LLL, J.
Stipulations in a covenant or other contract are to be regarded as dependent or independent, according to the intention and meaning of the parties, and the good sense of the case. Hotham v. East India Company, 1 T. R. 638; Porter v. Shepperd, 6 T. R. 665; Campbell v. Jones, 6 T. R. 570; Morton v. Lamb, 7 T. R. 125. And where an act is to be done by one party by way of condition precedent to his right to claim performance on the part of the other, he cannot claim such performance without averring the doing of such act or his readiness and offer to do it. Thorpe v. Thorpe, Lord Raym. 662; Collins v. Gibbs, 2 Burr. R. 899; Brackenbrough v. Ward’s adm’r, 4 Rand. 352. So where the reciprocal acts are concurrent, and to be done at the same time, neither party can maintain an action against the otiher without averring performance of his own part of the agreement, or that which is equivalent. Glazebrook v. Woodrow, 8 T. R. 366; Morton v. Lamb, 7 T. R. 125; Heard v. Wadham, 1 East’s R. 619; Robertson v. Robertson, 3 Rand. 68; 1 Saund. 320 d; Roach v. Dickinsons, 9 Gratt. 154.
In this case it is plain the provisions in the agreement for the execution of the release, and the payment of the amount found due on the final estimate, must be regarded as mutual and dependent. This was only to be paid upon McDonough’s executing a release under seal of all claims and demands whatever against the company in any manner growing out of the agreement. McDonough can maintain no action for the recovery of the amount of this final estimate without averring that he had executed and delivered or tendered *the required release. The stipulation for the release is perfectly distinct and intelligible, and must have been regarded by the parties as material. In effect, they made it part of the consideration for the payment of the final estimate. The company insisted on the right to retain this until all litigation about previous estimates, the amount and kind of work done, amount of payments, &c., had ceased, or until the contractor should release all supposed causes of action that might arise out of the contract. It was deemed important thus to provide a means to compel the contractor to assert any claim he might think he had against the company in due time before by the covering up of the work or other causes it might be impossible to ascertain its proper class, amount and value, or to release such supposed claims if he would demand payment of the final estimate ; and the contractor submits to such a provision. If parties will deliberately enter into such a stipulation, no reason is perceived why full effect must not be given to it in a court of law. However stringent it may be, it is neither immoral nor illegal nor tainted with any other vice which should forbid the aid of that court to its enforcement.
And as the contract could not thus compel payment of this final estimate without averring the delivery or tender of the required release, neither can the attaching creditor, without showing the same or its equivalent. The latter comes in under the former; can *735 claim only as he can claim ; and must recover on the same terms. There is nothing in the attachment law which amplifies or extends the rights of a creditor' seeking its aid in the subject attached beyond those of his debtor. To recover at law on his attachment he must do or have done what his debtor would be required to do to entitle him to recover. The attachment law remits no preliminary duty required of the debtor to perfect his demand, in favor of the attaching *creditor. To do so would be not to enforce but to change the contracts of parties without their consent or default; and this it was neither the province nor the design of the act to do. The 12th section, which creates the lien, was intended to give to the attaching creditor a preference over all others acquiring rights to the subject after the levy of his attachment by transfer or otherwise from the party or by legal process. It was not designed to take from the garnishee any previous right which he had, nor to subject him to any recovery under the attachment from which by the terms of his contract he was exempt until performance by the other party of his part of the agreement. The case of Doe ex dem. Mitchinson v. Carter, 8 T. R. 57, and Ibid. 300, cited by the counsel, seems to have been decided purely on the question of the meaning of the covenant and the intention of the parties. It was there held that the levy of an execution upon a lease containing a covenant against letting, selling, assigning, &c., with a clause of re-entry in case of breach, created no forfeiture because not so intended; all the terms of the lease pointing to some act to be done by the tenant himself. It was not upon the notion that the rights of the creditor were in any wise amplified or enlarged. And all the judges were agreed that a covenant might be inserted in a lease which would prevent the term from passing under a commission of bankruptcy, or being levied on under an execution against the tenant. As said by Bord Kenyon, “a grant of an estate prima facie carries with it all legal incidents; but modus et conventio vincunt legem, and parties to a contract may model it in what manner they please.” Ibid. 61. This latter remark applies with full force to the present case.
A judgment for the whole amount of the final estimate, even if fully paid, would not amount to such a release as would fill the terms of that required by the contract. It could serve as a bar pro tanto only : it *would be no bar to an action for other alleged breaches of the contract. This would be true if the action were at the suit of the party himself ; a fortiori the judgment on the attachment could only bar for so much. Beyond this the debtor in the attachment suit would clearly not be bound. It would be unjust he should be. The attaching creditor has no interest in the subject beyond his demand. If the garnishee admits funds to that amount or the jury finds them, he looks no further but takes his judgment accordingly. He is not concerned to contest whether his debtor have not further demands against the garnishee ; and the judgment against the latter ascertains that there is so much at least in his hands, but not (as against the debtor) that there may not be more. But the party was entitled to a release not only for the final estimate, but for all other causes of action whatever arising out of the contract: and this certainly he would not gain by a judgment for a part of the final estimate only, as this judgment in fact is. And the release was to be under the seal of the party : ita scripta est, and although if a contract be by parol, it may before breach be waived by parol, yet after breach, a release to operate as such in a court of law must be by instrument under seal. Bul. N. P. 152; Chit. Cont. 778; Bender v. Sampson, 12 Mass. R. 44; Crawford v. Millspaugh, 13 John. R. 87.
Nor does the declaration appended to the judgment, that it is to have the force and effect of a release executed in accordance with the contract, give to it any different character or operation. The court had no power in this summary mode, to terminate and cancel the contract as to either of the parties. Whether the debtor had or had not other and further demands against the garnishee beyond the amount sequestered, was not in issue in the proceeding, and without ascertaining that he had not, no court could undertake to absolve the company from its entire liability. But a *court of law possesses no such power to enlarge and extend the operation of its judgment, and of its own motion to assign to it a specific character and effect. Its judgment still has its regular and legal operation only, which is to bar the debtor of his action against the garnishee to the extent of the amount thereby recovered. Beyond this he is in no manner bound ; and the attempt to. make the judgment operate as a full release of all causes of action against the garnishee-under the contract, to overcome the objection of the want of the release stipulated for in the contract, was a mere nullity.
That the lien of the attachment cannot be enforced without rendering a judgment against the garnishee, can be no reason why his legal rights should be invaded ; nor can it give the court power to render a judgment against him, when according to the terms of' his contract he was not liable to such judgment. That the debtor might improperly withhold the release for the purpose of baffling his creditors, or that he and the garnishee might collude to prevent them from reaching the effects in the hands of the latter, cannot authorize a Court of law either to disregard the terms of the contract between the garnishee and the debtor, or to substitute a discharge by its judgment for the release under seal required as the condition of the-payment of what may be due. Prom whatever motive the release be withheld, the remedy of the creditor must be sought in another forum.
I am of opinion to reverse the judgment,, and discharge the attachment.
The other judges concurred in the opinion,, of Bee, J.
Judgment reversed.